WESTERN UNION TELEGRAPH CO. v. McFRANCIS.

(Court of Civil Appeals of Texas. Ft. Worth. June 8, 1912.)

1. TELEGRAPHS AND TELEPHONES (§ 66*) — NONDELIVERY OF TELEGRAM — SUFFICIENCY OF EVIDENCE.

In an action against a telegraph company for damages for the nondelivery of a telegram, evidence *held* to show that the nondelivery was due to the defendant's negligence and failure to perform its contract duty.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. § 66.*]

2. TELEGRAPHS AND TELEPHONES (§ 37*) — TELEGRAM—ADDRESS.

Where a telegram was addressed to the recipient at Ft. Worth, "care R. R. Ticket Office," the quoted words were added to the telegram merely to enable the telegraph company to more readily and promptly deliver the telegram, and not for the purpose of giving some person, other than the addressee, authority to receive it for her; and a delivery to the agent in charge of the Union Depot ticket office, without other effort to find the recipient, there being other ticket offices in the city, was not sufficient to relieve the company from liability for negligence in failing to deliver.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 23, 24, 29, 30; Dec. Dig. § 37.*]

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Action by W. C. McFrancis against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Spoonts, Thompson & Barwise and W. H. Francis, all of Ft. Worth, for appellant. Crenshaw & Boykin, of Ft. Worth, for appellee.

CONNER, C. J. The Western Union Telegraph Company appeals from an adverse judgment in the sum of $500 as damages for a failure to seasonably deliver the following telegram addressed to appellee's wife, viz.: "To Mrs. Maud McFrancis, care R. R. Ticket Office, Fort Worth, Texas. C. B. Meteer is dead. Wire instructions. Dr. G. O. Remy." The proof is that the telegram was promptly transmitted and delivered to F. C. Hendricks, in the ticket office of the Texas & Pacific Railway Company at its union depot in the city of Ft. Worth, Tex.; Hendricks then being a ticket agent for that company. Hendricks at the time knew appellee, but was unacquainted with his wife. Hendricks failed to deliver the telegram, and Mrs. McFrancis was thereby deprived of the opportunity of attending her father's burial. The various assignments of error presented for consideration are answered by a determination of the question of whether the evidence justifies the conclusion that must be imputed to the verdict that appellant was guilty of negligence, notwithstanding its delivery of the telegram to Hendricks as stated.

[1] The sender of the telegram, Dr. G. O. Remy, testified: "At the time I delivered the telegram to Mr. Troxel, I advised him that I had been informed that Mr. McFrancis, the husband of Mrs. Maud McFrancis, worked in some one of the offices about the railroad depot, and the message was sent in care of the railroad ticket office. * * * I was informed by Mr. Henry Schurman of Ainsworth, Nebraska, but now of Ft. Smith, Arkansas, that Mr. McFrancis worked in an office at the depot in Ft. Worth. This was the only information I had as to their address, and so stated the same to Mr. Troxel. I made no effort to get any further information as to the address of Mrs. McFrancis. Mr. Schurman claimed to have information that Mr. McFrancis was at the depot, or had been working there recently; and he was the only person having any knowledge on the subject that I had access to. I had no means of getting a more accurate address." Cross-examined, he said: "I learned from Henry Schurman, who claimed to have information on the subject, that the message sent in care of the railroad ticket office would likely locate Mrs. McFrancis; and it

was on account of this information that the message was so addressed. All the information regarding the address was obtained from Henry Schurman, and I gave the address simply as he gave it to me; and I had nothing in mind whatever as to any particular ticket office where Mr. McFrancis had been or was then employed, other than the word Henry Schurman had given me."

Appellee, W. C. McFrancis, testified: "My name is W. C. McFrancis. I am the plaintiff in this case. My occupation is that of chief clerk of passenger accounts in the Frisco auditor's office. I live in Ft. Worth, Texas, at 1818 Alston avenue, and have lived in that place four years last April. I have worked three years for the Frisco, next October, three years. Prior to that time, I was assistant ticket agent for the Santa Fé for over two years, assistant ticket agent for the Rock Island for three years, and I worked at the T. & P. depot, prior to that time, for two years. At the time I worked for the city ticket office for the Santa Fé, it was located at 710 Main street—I should say something like 14 blocks from the depot. When I worked for the Rock Island ticket office, it was at the corner of Fifth and Main streets, where it is now located. * * * I have not, in the past 10 or 11 years, known of any other man living in Ft. Worth by the name of McFrancis, except my father and brother, and they have not been here for some 10 years. The railroad ticket offices in Ft. Worth, and their location, are as follows: The T. & P. station, commonly called the Union Depot, at the foot of Main street, corner of Main and Front streets; and the Union Station, commonly called the Santa Fé, on Jones street; the T. & P. city ticket office on Main street, between Sixth and Seventh streets; the Frisco city ticket office on the corner of Eighth and Main streets; the M., K. & T. city ticket office on the corner of Ninth and Houston streets; the Ft. Worth & Denver city ticket office on Main street, between Fifth and Sixth streets; the Cotton Belt city ticket office located on Main street in the Ft. Worth National Bank Building, between Fourth and Fifth streets; the H. & T. C. city ticket office in the Westbrook Hotel, corner of Fourth and Main streets; and the Santa Fé city ticket office located on Houston street, between Sixth and Seventh, I believe. There are two passenger depots in Ft. Worth; but I cannot state how many freight depots. [It was admitted that there are sixteen railways in Ft. Worth; that each of them has a freight depot.] I have not, within the past two years, given authority to any person with reference to telegrams addressed to me. * * * The various ticket offices that I have named, except the one at the depot, are known as city ticket offices, and the ticket offices at the depots are known as depot ticket offices. The ticket office at the T. & P. station down here at the foot of Main street is the only railroad depot ticket office that I have worked in in Ft. Worth."

Miss Myra Hunter testified to the effect that she was in charge of the directory service of the United States post office at Ft. Worth; that the instructions to her department were to give the Western Union Telegraph Company all information possible to enable it to deliver its messages; that she knew Mrs. Maud McFrancis in April, 1910, and that, had the telegram in question been submitted to her, she could have given a more specific address; that it was of "frequent and common occurrence for the Western Union people to seek information as to the location of persons from my department, for the purpose of delivering telegrams; it occurs many times a day, and I render them whatever aid I can, and take the same interest in it that I do in trying to deliver a letter. We have instructions from the department to give such assistance. This arrangement existed in March, 1910, and it has been the custom for the past eight years, to my knowledge. The Western Union people knew of such regulation, and resorted to the department many times a day for information on these matters."

It was admitted that: "The city directory of the city of Ft. Worth, for the years 1909–10, and on page 350 thereof, shows the name of W. C. McFrancis, and his residence address as 1818 Alston avenue. It is further agreed that there is no other McFrancis listed in said directory."

The messenger boy at Ft. Worth testified that he received the telegram at 4:25 p. m. on March 31, 1910, carried it to the Texas & Pacific depot, and there delivered it to Hendricks at 4:27 p. m. of the same day, and that: "The person who signed for this message said he would take it and sign it, and that is all that was said. * * * I took this message down to the T. & P. station, and Mrs. McFrancis was not there, and the man, C. Hendricks, signed for it, and I left it with him. I asked this man Hendricks for information, and he told me she wasn't in right now, but that he would sign up for me. * * * My boss in the Western Union office at this time was Mr. Gordon. At the time he placed this message in my hands for delivery, he never said anything that I know of. * * * He just handed the message to me in my book, and I took it down to the T. & P. station. I did not go anywhere with this message after I took it to the T. & P. station. I did not look in the city directory of the city of Ft. Worth to see if I could find any one by the name of McFrancis; nor did I ask any one to look in the directory for me."

F. C. Hendricks identified his signature to the delivery sheet, but testified that he had no independent recollection of having received the telegram; that he knew W. C. McFrancis, but not his wife; that he could give

no reason why he did not associate the addressee of the message with W. C. McFrancis; that he knew at the time where W. C. McFrancis was working, and that he was a man of family; that ordinarily telegrams delivered at the depot were for persons traveling, and were kept, subject to call, in pigeon holes, but he could not tell what he did with the telegram in question after he took it.

We are of opinion that the evidence quoted and given sustains the verdict on the issue of negligence; and that hence no error was committed in refusing to give the peremptory instruction set out in appellant's first assignment of error, or in overruling the motion for a new trial, as complained of in the second and third assignments. No complaint of the trial or of the sufficiency of the evidence to sustain the material allegations of the plaintiff's petition is made, save that it is insisted, as indicated, that the evidence shows that appellant, without fault, fully discharged its contract and should have been discharged; the case of Western Union Telegraph Co. v. Young, 77 Tex. 245, 13 S. W. 985, 19 Am. St. Rep. 751, and a number of others of like import, being cited in support of appellant's contentions. In the case mentioned, it was held by our Supreme Court that a delivery to a person in whose care a telegram was sent was a delivery to the addressee, within the meaning of the contract of transmission. However much we might be inclined to disagree with the decision mentioned, it is nevertheless binding upon us. We think, however, that we here have quite a different case.

[2] In the case before us, no person is named by the sender as one authorized to receive the telegram for Mrs. McFrancis. Nor is any specified "railroad ticket office" designated, so as to distinguish it from any other railroad ticket office in Ft. Worth, of which there were several, as established by the proof. So that a plain and justifiable inference from Dr. Remy's testimony is that the term, "care R. R. ticket office," were added to the telegram in question, not for the purpose of giving some person, other than the addressee, authority to receive it for her, but as a guide—as information—to the telegraph company, to enable it the more readily and promptly to discharge the duty imposed by the contract to deliver to Mrs. Maud McFrancis. This view of the testimony is emphasized by the fact that the court, at appellant's special request, submitted to the jury the issue of whether Dr. Remy intended for the message sued upon to be delivered to the "Texas & Pacific Railroad ticket office," instructing the jury that if he had such intent the verdict should be for the defendant. The verdict is the other way; and we think the jury were justified in the conclusion that appellant had not fully met its contract and duty by a mere delivery of the telegram at the ticket office in the depot of the Texas & Pacific Railway, without other inquiry or further effort. We think this case more nearly like that of Western Union Telegraph Co. v. Walker, 37 Tex. Civ. App. 515, 84 S. W. 695, by this court. There the telegram was addressed, "care some hotel, Duncan, I. T.," and we held this did not authorize the telegraph company to cease its search for the addressee after visiting the various hotels in Duncan, unless in so doing it acted as a reasonably prudent person would have done under the circumstances. So here the plain measure of appellant's duty was to exercise due care to deliver the important telegram in question to Mrs. Maud McFrancis; and it was for the jury to say whether, under the circumstances, such care was exercised. They have said not, and we find no reason to disturb their verdict.

The judgment will be affirmed.